986 F.2d 1424
 NOTICE: Seventh Circuit Rule 53(b)(2) states unpublished orders shall not be cited or used as precedent except to support a claim of res judicata, collateral estoppel or law of the case in any federal court within the circuit.
Douglas RUTLEDGE, Plaintiff/Appellant,
v.
Louis SULLIVAN, Secretary of Health and Human Services
Defendant/Appellee.
 No. 91-3811.
 United States Court of Appeals, Seventh Circuit.
 Submitted Jan. 28, 1993.*
Decided Feb. 19, 1993.
 
 Before CUMMINGS, CUDAHY and MANION, Circuit Judges.
 
 ORDER
 
 1
 Douglas Rutledge brought this action in the district court following a finding by the Secretary of Health and Human Services that his period of disability insurance benefits under Title II of the Social Security Act (the "Act"), 42 U.S.C. §§ 416(i), 423, ended effective September 30, 1987. The district court affirmed the Secretary's finding. Mr. Rutledge appeals, and we affirm the decision of the district court.
 
 I. BACKGROUND
 
 2
 In August 1985 Mr. Rutledge applied for disability benefits. He was found to be disabled as of September 21, 1984 as the result of a severe, comminuted fracture of the left tibia, which he sustained while playing volleyball. On July 2, 1987, Mr. Rutledge's disability was determined to have ceased and, as a result, his disability payments were discontinued at the end of September 1987. A disability hearing officer confirmed the finding of July 2, 1987, and Mr. Rutledge requested a hearing before an administrative law judge ("ALJ"). At the hearing, the ALJ considered medical reports prepared by Mr. Rutledge's attending physician, Dr. James Chen, as well as residual functional capacity assessments prepared by Drs. W.S. Tucker and Henry J. Marciniak, and heard the testimony of Mr. Rutledge and his wife. Mr. Rutledge's testimony consisted of subjective complaints of disabling functional limitations and pain.
 
 
 3
 After considering testimony and medical evidence, the ALJ concluded that Mr. Rutledge's disability ceased in July 1987 and found Mr. Rutledge fit to perform sedentary work. The ALJ's decision became the final decision of the Secretary of Health and Human Services on August 26, 1988, when the Appeals Council denied Mr. Rutledge's request for review.
 
 
 4
 Mr. Rutledge brought an action in district court, seeking review of the Secretary's decision. 42 U.S.C. § 405(g). The district court concluded that substantial evidence supported the ALJ's finding that Mr. Rutledge was not disabled. This appeal followed.
 
 II. ANALYSIS
 
 5
 Mr. Rutledge disputes the ALJ's finding that he is able to perform sedentary work. He maintains that, in reaching this conclusion, the ALJ erred by failing to give appropriate weight to his subjective complaints of disabling functional limitations and pain and his wife's corroborative testimony.
 
 
 6
 Mr. Rutledge testified that he experienced swelling in his knee, which forced him to sit and lie down for twelve to thirteen hours per day. He testified that he kept his leg elevated virtually all the time, and could not walk without the aid of a cane. He reported that he could only walk a few blocks at a time and that he could not sit in a regular chair all day. He further testified that he exercised and did physical therapy at home, including riding a stationary bicycle for ten minutes at a time, three times daily, and performing repeated leg lifts.
 
 
 7
 The testimony of Mr. Rutledge's wife did not entirely corroborate her husband's testimony. Mrs. Rutledge testified that her husband used a cane and kept his leg elevated to assuage the pain and swelling in his knee; however, she testified that he did not exercise or do physical therapy. Nor did the objective clinical evidence entirely corroborate Mr. Rutledge's testimony. The clinical reports submitted by the treating physician, Dr. Chen, and the residual functional capacity assessments prepared by Drs. Tucker and Marciniak concluded that Mr. Rutledge's injury had healed well enough to allow him to perform sedentary work. On the basis of the inconsistencies between Mr. Rutledge's testimony on the one hand and the noncorroborative testimony of his wife and the medical evidence supporting the Secretary's position on the other, the ALJ concluded that Mr. Rutledge's testimony was exaggerated and not credible.
 
 
 8
 In Zblewski v. Schweiker, 732 F.2d 75 (7th Cir.1984), this court held that an ALJ must articulate reasons for crediting or rejecting testimony in cases in which the claimant presents considerable evidence to counter the Secretary's position, id. at 79, precisely the situation here. Mr. Rutledge contends that the ALJ in this case fell short of Zblewski because he failed to provide "specific and justifiable findings" supporting his determination that the testimony was incredible. He contends that, in light of testimony and objective medical evidence supporting his claims of disabling pain and functional limitations, the ALJ should not have found his testimony incredible.
 
 
 9
 Mr. Rutledge reads Zblewski too broadly. Zblewski does not speak to challenges to the substance of an ALJ's credibility determination, only to whether an ALJ has indeed made a credibility determination. If he has made a credibility determination, Zblewski requires the ALJ to articulate his reasoning. It is enough if the ALJ indicates the path of decision so that his reasoning may be discerned. Stein v. Sullivan, 966 F.2d 317, 319 (7th Cir.1992); Brown v. Bowen, 847 F.2d 342, 346 (7th Cir.1988). His assessment of the evidence only must be sufficient to permit meaningful appellate review. Young v. Secretary of Health and Human Svcs., 957 F.2d 386, 393 (7th Cir.1992); Walker v. Bowen, 834 F.2d 635, 643 (7th Cir.1987); see also Look v. Heckler, 775 F.2d 192, 195 (7th Cir.1985); Rousey v. Heckler, 771 F.2d 1065, 1069 (7th Cir.1985); Zalewski v. Heckler, 760 F.2d 160, 166 (7th Cir.1985).
 
 
 10
 The ALJ in the present case sufficiently articulated why he found Mr. Rutledge's testimony incredible. In his findings, the ALJ explicitly stated that Mr. Rutledge's testimony concerning his pain and functional limitations was inconsistent with the objective medical evidence and unsupported by other evidence in the record. Moreover, the ALJ explained that he found Mr. Rutledge's testimony incredible and exaggerated because he found it inconsistent with the testimony of Mrs. Rutledge. The ALJ's reasons for concluding that Mr. Rutledge's testimony was incredible are evident on the record, and Zblewski requires no more.
 
 
 11
 Stripped to its essentials, Mr. Rutledge's claim is not that the ALJ failed to sufficiently articulate why he found Mr. Rutledge's testimony incredible but, rather, that the ALJ's credibility determination was wrong. Reviewing courts generally uphold credibility judgments because the trier of fact has a unique opportunity to observe and evaluate the witnesses. See Anderson v. Bessemer City, 470 U.S. 564, 575 (1985); Clark v. Bowen, 891 F.2d 175, 178 (7th Cir.1989); Walker, 834 F.2d at 641. Thus, it is said that credibility determinations are essentially unassailable. See Pearce v. Sullivan, 871 F.2d 61, 64 (7th Cir.1989).
 
 
 12
 But credibility determinations are more closely scrutinized when they rest on objective factors that are just as easily assessed on a cold record as in a warm courtroom. See Anderson, 470 U.S. at 575; Thomas v. Sullivan, 801 F.Supp. 65, 70 (N.D.Ill.1992). In other words, when objective inconsistency is at issue, the ALJ has no special advantage over a reviewing court in determining credibility. As noted above, the ALJ found Mr. Rutledge's testimony incredible because he found it inconsistent with the testimony of Mrs. Rutledge and unsupported by the objective medical evidence. He did not indicate that Mr. Rutledge was being evasive or deliberately obtuse. The credibility determination made by the ALJ in this case was based on objective inconsistency rather than on "intangible and inarticulable elements which impress the ALJ, that, unfortunately leave no trace that can be discerned in this or any other transcript that we review." Kelley v. Sullivan, 890 F.2d 961, 964 (7th Cir.1989) (quoting Imani ex rel. Hayes v. Heckler, 797 F.2d 508, 512 (7th Cir.), cert. denied, 479 U.S. 988 (1986)). Hence we examine the cold record, and will reverse the ALJ's credibility determination if we find it to be "patently wrong." Herr v. Sullivan, 912 F.2d 178, 182 (7th Cir.1990).
 
 
 13
 Mr. Rutledge directs us to medical evidence that may support his testimony that he suffered incapacitating pain. The medical evidence considered by the ALJ revealed that in June 1987 Dr. Chen reported that post-traumatic arthritis had developed in Mr. Rutledge's knee, and that there was a spur and irregularity of the bone plate at the joint. Moreover, the evidence consisted of office notes attached to Dr. Chen's medical report showing that over a two-year period Mr. Rutledge visited Dr. Chen twenty-nine times, complaining of recurring pain and swelling in his knee, for which he was prescribed medication.
 
 
 14
 Nevertheless, the ALJ reasonably found Mr. Rutledge's complaints of pain exaggerated in light of the entire record. Dr. Chen reported in June 1987 that a solid union of Mr. Rutledge's fracture was evident. In October 1987 Dr. Chen concluded that, in view of all the relevant factors, including the estimated degree of Mr. Rutledge's pain, he believed that Mr. Rutledge could perform sedentary work on a sustained basis. Dr. Chen's opinion was corroborated by the residual functional capacity assessments completed by Drs. Tucker and Marciniak. They reported that Mr. Rutledge was capable of lifting and carrying up to twenty pounds and ten pounds frequently, that he could sit for about six hours during an eight-hour day, stand and walk for about six hours intermittently during the day, and perform all work activities that did not involve balancing, crawling, climbing ladders, working at heights, or repetitively operating left-foot controls.
 
 
 15
 Additionally, the testimony of Mrs. Rutledge directly contradicted her husband's claim that he did physical therapy and exercises every day at home. Even though she worked outside the home during the day, it is implausible that Mrs. Rutledge would be entirely unaware that her husband engaged in these activities. The ALJ reasonably concluded that Mr. Rutledge had tried to place himself in a better light for a favorable ruling, and that this detracted from the credibility of his testimony.
 
 
 16
 Mr. Rutledge asserts that it was "absurd" for the ALJ to find his testimony incredible solely based upon an inconsistency between his and his wife's testimony; however, Mr. Rutledge ignores the contribution of the medical evidence to the ALJ's conclusion. It was the combination of medical evidence supporting the Secretary's position and Mrs. Rutledge's noncorroborative testimony that led the ALJ to conclude that Mr. Rutledge's testimony was exaggerated and incredible. We cannot "decide facts anew, reweigh the evidence, or substitute our own judgment" for that of the ALJ. Delgado v. Bowen, 782 F.2d 79, 82 (7th Cir.1986); see also Scivally v. Sullivan, 966 F.2d 1070, 1075 (7th Cir.1992). The objective medical evidence and the testimony of Mrs. Rutledge brought into question the credibility of Mr. Rutledge's testimony that he suffered disabling functional limitations and pain. Given the aggregate of the evidence contradicting Mr. Rutledge's testimony, we cannot say that the ALJ's credibility determination is patently wrong.
 
 III. CONCLUSION
 
 17
 The ALJ sufficiently articulated his reasons for finding incredible Mr. Rutledge's testimony of disabling functional limitations and pain. Moreover, the ALJ's credibility determination is not patently wrong. The district court's judgment is therefore AFFIRMED.
 
 
 
 *
 After preliminary examination of the briefs, the court notified the parties that it had tentatively concluded that oral argument would not be helpful to the court in this case. The notice provided that any party might file a "Statement as to Need of Oral Argument." See Fed.R.App.P. 34(a); Cir.R. 34(f). No such statement having been filed, the appeal is submitted on the briefs and the record