**Janet CAMPBELL, Plaintiff,**

v.

**Donna SHALALA, Secretary of Health and Human Services, Defendant.**

No. 94 C 3991.

United States District Court,
N.D. Illinois,
Eastern Division.

March 21, 1995.

Ashley S. Rose, Wheaton, IL, for plaintiff.

Brian Havey, Asst. U.S. Atty., Chicago, IL, for defendant.

## MEMORANDUM OPINION AND ORDER

SHADUR, Senior District Judge.

Janet Campbell ("Campbell") appeals the decision by Department of Health and Human Services ("HHS") Secretary Donna Sha-

lala ("Secretary") denying Campbell's claim for disability insurance benefits under the Social Security Act ("Act"), 42 U.S.C. §§ 416(i) and 423.[1] As is usual in these cases, Campbell and Secretary have filed cross-motions for summary judgment under Fed.R.Civ.P. ("Rule") 56, with Campbell alternatively moving for a remand of Secretary's decision. For the reasons stated in this memorandum opinion and order, both of Campbell's motions are denied and Secretary's motion is granted.

### Facts [2]

Campbell last worked on July 15, 1989 (R. 48). At the time of the Hearing she was living in a one-story ranch house with her husband and 28–year–old son (R. 38–40). Campbell spends most mornings "putzing" around (R. 40). For lunch she sometimes drives to a restaurant with a friend (R. 40). Because she does not sleep well, Campbell often naps in the afternoon (R. 41). She cooks dinner for her family and spends most evenings at home with her husband (R. 41).

According to the medical evidence, Campbell has arthritis in her back and hands (R. 59, 97–103, 106–07, 109–18, 124–36). But Campbell's claims go well beyond that: She asserts that she suffers debilitating pain in her back, hands, shoulders, right arm, hips, knees and toes (R. 30–42). As a result of those assorted aches and pains, she says she cannot sit or stand for more than 15 to 20 minutes at a stretch (R. 37–38) or lift over 5 to 10 pounds (R. 31–32, 38) or walk without a cane, and even then she must take 15–minute rests at half-block intervals (R. 36–37).[3] Campbell asserts that much of what she can or cannot do on any given day depends on the humidity (R. 33).

ALJ Horn was plainly troubled by inconsistencies that he found between Campbell's testimony and some of her earlier written responses (R. 44–46, 78):

Q [ATTY] [D]id you lift anything in your housecleaning chores at Furmilab?

A Well, we emptied the waste cans and we had a cart that we had all of our cleaning supplies on, and we had a garbage bag on the cart. It depends on what you put—put in that cart if it's very heavy. If you have heavy paper then it's going to be heavy. But it all depends on what, what you put in it, in the garbage bag, to determine how heavy it is.

Q Okay. And what would be the heaviest weight of that garbage bag?

A I'm going to have to guess at this. It's probably approximately 25 pounds or 30 maybe.

\*       \*       \*       \*       \*       \*

Q [ALJ] You were asked the same question in your vocational report. It said the heaviest was ten pounds, the weight that you most frequently lifted and carried was ten pounds.

\*       \*       \*       \*       \*       \*

Q [ALJ] So, how many times in a typical day or not during your shift were you lifting 25 pounds?

A When we emptied the garbage can.

Q How many garbage cans were there?

A Oh, probably hundreds of them, sir.

Q Is there a reason why that didn't stick in your mind when you were answering [the vocational report] when you only answered ten pounds?

Q I'm not sure why I did that, sir.

In addition the ALJ refused to credit Campbell's allegations of pain (R. 12):

Her activities of daily living appear to be relatively normal, and her description of her activities was not probative of the disabling level of pain. I considered her description of the location, duration, frequency, intensity and precipitating and aggra-

---

**1.** Further citations to the Act's provisions will take the form "Section ——," using the Title 42 numbering rather than the Act's internal numbering. Pertinent regulations from 20 C.F.R. will be cited "Reg. § ——."

**2.** What follows is a summary of the Administrative Record, including the transcript of Campbell's August 2, 1993 hearing (the "Hearing") before Administrative Law Judge ("ALJ") James A. Horn. All record citations will take the form "R. ——."

**3.** Although the Hearing transcript cannot of course reflect tone of voice, the ALJ's follow-up question on this last assertion by Campbell (R. 37) seems to convey a sense of incredulity.

vating factors of her symptoms. However, the issue remains the credibility of that testimony. Concerning medication the claimant said that she takes Darvocet which provides relief from her reported back and hip pain. She also said that Darvocet helps relieve the pain in the other areas of her body, such as the shoulders, knees, elbows. I note that the claimant testified that the pain developed depending on the weather conditions. The various treatment notes failed to disclose any side effects from any medication that could not be otherwise corrected with medication adjustment [ ]. The claimant has had physical therapy, for example, for her knee impairment, but the physical therapy prescribed was quite vigorous and would have been unlikely prescribed if her attending physician believed the claimant were experiencing disabling pain. No other measures of treatment have been prescribed. I observed that the claimant exhibited no pain-like behaviors at the hearing. She gesticulated with her arms freely, pointing out the areas of pain. She sat comfortably and arose easily. She did not appear to be guarded. Finally, the claimant has a financial interest in the favorable outcome of these proceedings.

In accordance with the familiar five-step process used to evaluate disability claims (Reg § 404.1520; *Young v. Secretary of HHS,* 957 F.2d 386, 389 (7th Cir.1992)), the ALJ determined at step 4 that Campbell had a residual functional capacity to perform a full range of medium work, including her past relevant work as a housekeeper (*id.*). That led to the conclusion that Campbell was not disabled (*id.*).

### *Campbell's Allegations of Pain*

This case presents a familiar situation: medical evidence that establishes the existence of a potentially debilitating impairment but that fails to corroborate the claimant's assertions as to the extent to which the impairment has affected her ability to work. For some time our Court of Appeals understandably read Secretary's then-existing reg-

ulations as calling for the rejection of a claimant's subjective allegations of pain if they were not substantiated by objective medical evidence (see, e.g., *Moothart v. Bowen,* 934 F.2d 114, 116 (7th Cir.1991)).[4] After Secretary promulgated revised and clarifying regulations (Reg. §§ 404.1529 and 416.929), this Court urged the need to change the *Moothart* position (*Thomas v. Sullivan,* 801 F.Supp. 65, 72–73 (N.D.Ill.1992); *Shields v. Sullivan,* 801 F.Supp. 151, 160 n. 16 (N.D.Ill. 1992)), and not long thereafter our Court of Appeals agreed with that need (*Pope v. Shalala,* 998 F.2d 473, 485 (7th Cir.1993)) and did precisely that (*id.* at 481–86).

At this point *Herron v. Shalala,* 19 F.3d 329, 334 (7th Cir.1994) and like cases have therefore settled on an approach different from that earlier called for by *Moothart:*

> Once the presence of a medically determinable physical or mental impairment is established that could reasonably be expected to produce the pain alleged, but the intensity or persistence of the pain is unsubstantiated by the medical record, the ALJ is obliged to examine and weigh all the evidence including observations by treating and examining physicians, third-party testimony, the claimant's testimony and daily activity, functional restrictions, pain medication taken, and aggravating or precipitating factors to evaluate how much the claimant's impairment affects his ability to work.

What has thus been created is a procedural requirement that (once triggered by the medical evidence) demands that the ALJ conduct an analysis of several possible bases for discounting or affirming a claimant's subjective allegations of pain. That requirement was clearly satisfied in this case. Because the medical evidence established that Campbell suffered a potentially debilitating impairment (arthritis), ALJ Horn considered the factual record as it pertained to each of the above-listed factors (except third-party testimony, of which there was none) and concluded on the basis of all the evidence that Campbell's complaints were exaggerated.

---

4. Our Court of Appeals was not alone in that view (see, e.g., the discussion—and partial rejec-

tion—of earlier case law in *Bunnell v. Sullivan,* 947 F.2d 341 (9th Cir.1991) (en banc)).

*ALJ's Credibility Determination*

Campbell now attacks the ALJ's credibility determination. That is an exceedingly difficult task on appeal, given the standard of review as expressed in such cases as *Herron,* 19 F.3d at 335 (emphasis added):

> Since the ALJ is in the best position to observe witnesses, we usually do not upset credibility determinations on appeal so long as they find some support in the record and are not *patently wrong.*

Accord (among numerous other cases), *Luna v. Shalala,* 22 F.3d 687, 690 (7th Cir.1994); *Dray v. Railroad Retirement Bd.,* 10 F.3d 1306, 1314 (7th Cir.1993).

■ ALJ Horn found Campbell's testimony about the intensity and extent of her pain inconsistent with her normal daily regimen, her minimal reliance on pain medication, her therapeutic history and her demeanor at the Hearing. In addition to those several valid bases (*Luna,* 22 F.3d at 690–91; *Dray,* 10 F.3d at 1314–15), no reader of the record can help but be struck by the manner in which Campbell's alleged ailments spread to otherwise healthy areas of her body during administrative review of her disability claim.

Take the cane, for example. In that respect Secretary's July 24, 1992 letter denied Campbell's initial application for benefits, observing "you are able to walk without the use of any assistive devices" (R. 53). Upon reconsideration Secretary again informed Campbell on January 4, 1993 that her application was denied in part because "you are still able to stand and walk without the assistance of a cane or crutch" (R. 60). Several months later the day of the Hearing found Campbell hobbling around on a cane.

Little wonder that the ALJ's questioning appeared to reflect an arched brow (see n. 3). But whether or not that specifically factored into ALJ Horn's conclusions, the elements that he did enumerate in his decision make it impossible to say on appeal that the ALJ was patently wrong in finding Campbell's allegations of pain not credible.

*Substantial Evidence*

■ That leaves only the question whether the ALJ's determination that Campbell was not disabled was based on substantial evidence. On that score the standard of review derives from Section 405(g)'s mandate that "[t]he findings of the Secretary as to any fact, if supported by substantial evidence, shall be conclusive" and from *Richardson v. Perales,* 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971), which defines "substantial evidence" as:

> more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.

That test is obviously not a demanding one. It is wholly understandable that *Ehrhart v. Secretary of HHS,* 969 F.2d 534, 538 (7th Cir.1992), frames the reviewing court's function in these terms:

> [W]e may not reweigh the evidence or decide whether a claimant is disabled. Nor may the court substitute its own judgment for that of the Secretary. By the same token, we must do more than rubber stamp the decisions of the Secretary.

Where the evidence of disability is largely subjective, deriving in principal part from the claimant's testimony, even under the new regulations a claimant's credibility figures decisively in the equation (*Dray,* 10 F.3d at 1314).

■ ALJ Horn found that Campbell could perform a full range of medium work, including her past relevant work as a housekeeper, and hence was not disabled. Reg. § 404.1567(c) defines "medium work" as involving the occasional lifting of no more than 50 pounds and the frequent lifting of up to 25 pounds. In deciding that Campbell was capable of such exertion, ALJ Horn first had to discount her allegations of pain, in particular her testimony that she could not sit or stand more than 15 to 20 minutes, lift over 5 to 10 pounds or walk without a cane. As already discussed, the ALJ followed prescribed procedures in evaluating Campbell's subjective complaints of pain, and his determination that she was not credible cannot now be disturbed. By finding Campbell capable of a full range of medium work, ALJ Horn effectively rejected all of Campbell's self-proclaimed substantial limitations. And once

that credibility determination went against her, there simply was nothing else in the record that the ALJ was required to accept as showing that Campbell was functionally restricted—let alone disabled.

Before this opinion turns to the only medical evidence that requires even brief discussion, it should be emphasized that this was not a case in which—by first focusing on general categorizations of work rather than on specific job demands—ALJ Horn engaged in the false syllogistic reasoning that sometimes infects step 4 analyses by ALJs.[5] As this Court has pointed out in such cases as *Mills v. Sullivan*, 804 F.Supp. 1048, 1055–56 (N.D.Ill.1992) and *Haddon v. Shalala*, 818 F.Supp. 1139, 1145 (N.D.Ill.1993), such an approach often generates this type of fallacy:

1. Claimant's past work was generally sedentary/light/medium/heavy/very heavy in nature.

2. Claimant could generally perform sedentary/light/medium/heavy/very heavy work.

3. "Therefore" claimant could assuredly return to his or her past work.

■ By contrast, in this case the correct question—whether Campbell's present capabilities matched the specific physical demands of her past relevant work (*Strittmatter v. Schweiker*, 729 F.2d 507, 509 (7th Cir. 1984), regularly followed in such cases as *Nolen v. Sullivan*, 939 F.2d 516, 518 (7th Cir.1991))—was correctly answered by the ALJ's findings: Here the major physical demand involved in Campbell's housekeeping job was lifting and carrying garbage cans. On her vocational report, Campbell estimated that the garbage weighed approximately 10 pounds (R. 78), while at the Hearing she enlarged that job demand to at the heaviest 25 or maybe 30 pounds. Either way, though, that fits within the category of medium work (Reg. § 404.1567(c))—and most importantly, Campbell was found by the ALJ still to be capable of fulfilling all the demands of such medium work.

■ Now to return briefly to the only piece of medical evidence suggesting that Campbell suffers from anything more than run-of-the-mill arthritic pain common to many workers her age: a May 21, 1992 note handwritten by her treating physician Dr. Mustafa Vidinli on a prescription pad, stating that "she is disabled to work at this time" (R. 103). Dr. Vidinli's treatment log for May 22, 1992 (R. 98) contains the following parallel entry:

> She wants to have a statement from me that she is disabled. I have written a statement indicating the diagnosis and she is disabled to work at this time.

ALJ Horn quite properly attributed little weight to Dr. Vidinli's opinion on the bases that (1) "it appears to be the result of an accommodating physician" and (2) it "invades an issue reserved for the Secretary" (R. 12–13). Reg. § 404.1527(e)(2) specifies that when a medical opinion is offered on the ultimate question of disability (or in other specified critical areas), the ALJ is *not* bound by such opinion. Instead, the "final responsibility for deciding these issues is reserved to the Secretary" (and through her to the ALJ, see Reg. § 404.1546). It appears from the treatment log that Dr. Vidinli might very well have been accommodating the demands of what is described in other parts of that document as a "high strung," "nervous" and "aggressive" (in short, an exceedingly *impatient*) patient (R. 125). But in any event the ALJ's determination is not cast into doubt by Dr. Vidinli's conclusory assertion.

### Conclusion

ALJ Horn properly considered Campbell's allegations of pain, and his conclusion that she was not credible is not patently wrong. In addition, his determination that Campbell was not disabled is based on substantial evidence. Because there are no genuine issues of material fact in dispute and Secretary is entitled to a judgment as a matter of law, Secretary's motion for summary judgment is

---

5. Definitions of the general work classifications (sedentary, light, medium, heavy and very heavy) properly play their role not at step 4, but rather

at Secretary's step 5 (see, e.g., *Young*, 957 F.2d at 389).

granted and both facets of Campbell's cross-motion are denied. This action is dismissed.