61 F.3d 905
 NOTICE: Seventh Circuit Rule 53(b)(2) states unpublished orders shall not be cited or used as precedent except to support a claim of res judicata, collateral estoppel or law of the case in any federal court within the circuit.
Betty L. CHAMPION, Plaintiff-Appellant,
v.
Shirley S. CHATER,[1] Commissioner of Social
Security, Defendant-Appellee.
 No. 95-1251.
 United States Court of Appeals, Seventh Circuit.
 Argued July 7, 1995.
Decided July 28, 1995.
 
 Before POSNER, Chief Judge, and BAUER and KANNE, Circuit Judges.
 
 ORDER
 
 1
 Appellant Betty Champion ("Champion") sought disability benefits on the grounds that neck and shoulder pain left her unable to work. Appellee Commissioner of Social Security ("Commissioner") denied benefits and Champion appealed. We affirm.
 
 FACTS
 
 2
 Champion is a fifty-three year old woman with a high school education. She was employed at General Mills from 1979 to 1991, first as a forklift operator, then as a food packer. While working at her packing job on June 20, 1991, Champion experienced severe pain in her neck and right shoulder. She was diagnosed as suffering from a herniated cervical disc with right foraminal stenosis and radiculopathy, and underwent a successful discectomy of the C4 and C5 vertebrae on September 4, 1991.[2] Champion was cleared to return to work by her physician; however, she was restricted to light duty that did not require her to lift her right arm above shoulder level.[3]
 
 
 3
 Champion returned to light duty at General Mills on January 7, 1992. However, this return was short-lived, as she was involved in a car accident on January 13, 1992. Although X-rays revealed no additional injury and an MRI of her shoulder indicated the rotator cuff was not torn, Champion complained of increased pain in her neck and shoulder. She was off work for a few more weeks, and she received additional physical therapy and medication. She returned to work on February 19, 1992, but quit her job on May 18, 1992. Champion testified that she stopped working because the pain in her neck and shoulder prevented her from doing her job. Other documents in the record indicate Champion had stated her job was being phased out by her employer. Champion has been unemployed since May 18, 1992.
 
 
 4
 Champion filed an application for disability benefits on June 3, 1992, claiming she has been disabled since June 20, 1991 as a result of debilitating pain in her right shoulder and neck. Her application was denied both initially and on reconsideration. She asked for an administrative hearing, which took place on June 1, 1993. Champion testified that she was capable of doing very little for herself, and that her children saw to her housework and other daily needs. She further testified she spent her days watching television and speaking on the phone. Champion testified that she can only sit or stand for brief periods, cannot drive a car or ride the bus, and can only walk for a block, at most. Champion further testified that she took painkillers daily. Champion and a vocational expert were the only individuals who testified.
 
 
 5
 The administrative law judge ("ALJ") held that Champion was not disabled, based in part upon the ALJ's determination that Champion's testimony was not credible and that she had exaggerated her symptoms. The ALJ noted that, while there was evidence that Champion had a medically determinable impairment that could cause some discomfort, the record did not bear out Champion's claims of disability. The ALJ emphasized that Champion's surgery had been successful, and she had been cleared to return to work. Further, Champion had received relatively favorable medical evaluations regarding her shoulder in April 1992 and August 1992 by her physicians, and had been cleared for sedentary or light work in her Functional Capacity Evaluation. In addition, the ALJ noted that Champion was able to function on her job and in her life. The ALJ also concluded there were no noteworthy ill-effects from the diabetes medication.
 
 
 6
 The ALJ held that Champion could return to her past employment. Further, the ALJ alternatively held, based on the vocational expert's testimony, that Champion could perform other jobs that exist in significant numbers in the economy. The ALJ determined that Champion could perform light work with the added non-exertional limitation of no lifting above the shoulder level. Champion's administrative appeal was denied, and she brought this action.
 
 
 7
 In the district court, Champion maintained that the ALJ's decision was in error because the ALJ's credibility findings were patently wrong, the ALJ disregarded key evidence, and the ALJ did not formulate a proper hypothetical question to the vocational expert. The district court concluded the ALJ's decision was supported by substantial evidence and that the hypothetical question was properly formulated.
 
 
 8
 On appeal, Champion challenges the ALJ's decision on several grounds:
 
 
 9
 1. that the ALJ's conclusion that Champion exaggerated her symptoms is against the manifest weight of the evidence in the record, as substantial medical evidence supports her position;
 
 
 10
 2. that the ALJ disregarded her complaints regarding her diabetes medication.
 
 
 11
 3. that the ALJ improperly applied the vocational grid because Champion had a non-exertional limitation, and utilized an improper hypothetical question that did not include all of Champion's impairments.[4]
 
 ANALYSIS
 
 12
 "[T]o be disabled means to be unable 'to engage in any substantial gainful activity by reason of any medically determinable physical impairment or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months.' " 42 U.S.C. Sec. 1382c(a)(3)(A). See also Knight v. Chater, No. 94-3458, slip op. at 5 (7th Cir. May 24, 1995). Disability claims are evaluated under a five-step analysis: 1) whether the claimant is currently employed; 2) whether the claimant has a severe impairment; 3) whether the claimant's impairment meets or equals one of the impairments listed by the Social Security Administration; 4) whether the claimant can perform her past work; and 5) whether the claimant is capable of performing work in the national economy. Knight, slip op. at 5. If the individual satisfies steps one through three, she will be found to be disabled. Id. If she satisfies one and two, but not three, then she must satisfy step four. Id. Once step four is satisfied, the burden is upon the Commissioner to establish the individual can perform work in the national economy. Id.
 
 
 13
 The court examines the entire record when reviewing the ALJ's decision. Herron v. Shalala, 19 F.3d 329, 333 (7th Cir.1994). The ALJ's finding will be affirmed only if it is supported by substantial evidence; substantial evidence is defined as sufficient relevant evidence that a reasonable person would accept as adequate to support the decision. Diaz v. Chater, No. 94-2763, slip op. at 4 (7th Cir. May 24, 1995). The ALJ must articulate his analysis of the evidence to such a degree that the court can follow his reasoning. Id. at 8. Further, the ALJ may not select and discuss only the evidence that supports his conclusion. Id. The ALJ's analysis should show the ALJ considered all the important evidence, and will be deemed inadequate if the ALJ fails to consider an entire line of evidence. Id. at 8-9. The ALJ need not, however, "provide a complete written evaluation of every piece of testimony and evidence." Id. at 9. The court will not substitute its judgment for that of the ALJ by reweighing the evidence or reevaluating the facts to decide whether an individual is disabled. Herron, 19 F.3d at 333. See also Luna v. Shalala, 22 F.3d 687, 689 (7th Cir.1994). An ALJ's credibility determinations are not upset on appeal unless they are patently wrong. Herron, 19 F.3d at 335.
 
 
 14
 In addition, complaints of pain will not be disregarded solely because objective medical evidence was not introduced to support the extent of the reported pain. Pope v. Shalala, 998 F.2d 473, 486 (7th Cir.1993). However, the court is not "required to give full credit to every statement of pain, and require a finding of disabled every time a claimant states she feels unable to work." Id. Based upon the record, an ALJ may make a credibility determination that the individual's reports of pain are exaggerated. Diaz, slip op. at 8; Dray v. Railroad Retirement Board, 10 F.3d 1306, 1315 (7th Cir.1993).
 
 
 15
 A. Exaggeration of Symptoms/Substantial Evidence.
 
 
 16
 Champion challenges the ALJ's conclusion that the record indicates her complaints were exaggerated. Champion asserts substantial evidence supports her claims and that the ALJ disregarded her evidence.
 
 
 17
 Champion emphasizes the evidence relating to her spinal condition. However, this information pertained to her pre-surgery period. Given that her surgery went well and that she was cleared to return to work, it is of limited relevance. Cf. Knight, slip op. at 6 (record indicates patient healed well from surgeries and suffered no significant limitations).
 
 
 18
 Champion also relies heavily upon the Functional Capacity Evaluation ("FCE") (Record at 141-43), Drs. Watt and Hein's reports (Record at 146, 150, 151), and MRI results (Record at 103, 125, 126, 128). The indicated pages of the FCE show Champion performed poorly and suffered pain for a large portion of the tests. (Record at 141-43). However, the FCE concluded that Champion could perform work with a sedentary or light physical demand level. (Record at 144). Further, none of the cited doctor's reports indicated Champion was disabled. Dr. Hein's report indicates Champion had pain in her shoulder and noted, per X-rays, that she still had a small disc herniation with spur formation at C5/C6 and C6/C7. (Record 151).[5] However, Dr. Hein indicated Champion was functioning at her job and should continue to do so, pending further review by Dr. Watt. (Id.). Dr. Watt's report of April 9, 1992 indicates Champion could need permanent work restrictions, but only in the context of avoiding overuse strain when she exceeds her current light duty restrictions. (Record at 146).[6] Dr. Watt's report indicates Champion had full range of rotation, good motor strength, and only mild discomfort. (Id.) Champion's claims are further refuted by Dr. Mazur's report of August 25, 1992. (Record at 161-62). Dr. Mazur noted that Champion had good range of rotation and only mild discomfort at extremes in rotation. (Id.) Mazur further noted that while the shoulder condition[7] might be permanent, it was a common problem that people can generally function quite well with. (Id.)
 
 
 19
 The ALJ is required to give substantial weight to the medical evidence and opinions submitted, unless there is good cause for rejecting them, such as internal inconsistences or inconsistences with other evidence. Knight, slip op. at 7. Where the medical evidence is in conflict, the ALJ may resolve the battle of "dueling doctors." Dray, 10 F.3d at 1311; Diaz, slip op. at 5 n. 2. The ALJ did not disregard medical evidence. The bulk of the medical evidence simply does not indicate Champion is disabled. While there is evidence in the record indicating extreme pain, such as the presurgical reports, post-accident reports, and the therapist's notations in the FCE, it is superseded by the more recent doctor's reports. The ALJ's decision is supported by substantial evidence.
 
 
 20
 The ALJ also did not err in concluding Champion may well have exaggerated her lack of activity. In contrast to her testimony, she stated on her disability report she could still drive a car and ride the bus. (Record at 78). Further, she performed her duties for three months before leaving her job, and stated she could continue to perform them in her FCE. (Record at 130).[8]
 
 
 21
 Champion takes issue with the ALJ's conclusion that no precipitating factors were present which would indicate Champion's condition worsened after May 18, 1992. (ALJ's Decision at 4). Champion claims that Dr. Watt's report, dated April 9, 1992, refutes that conclusion. (Record at 146). As discussed earlier, Dr. Watt's statement and Dr. Mazur's report both indicate the shoulder had full range of rotation, good motor strength, and only mild discomfort at extremes of flexion and rotation. The evidence indicates Champion's condition was improving rather than worsening.[9]
 
 
 22
 B. Diabetes Medication.
 
 
 23
 Champion argues that the ALJ improperly disregarded her reaction to her diabetes medication, notably fatigue and blurred vision, and mischaracterized the medical records relating to her experience with the medication. (Record at 178, 179).
 
 
 24
 A review of the medical documentation indicates Champion may have had some vision difficulties in November 1991, but that they did not persist, as indicated by the treatment notes for subsequent visits through February 4, 1993 (although there were some fluctuations in blood sugar).[10] (Record at 178, 179). Nothing in the record indicates the diabetic condition, or her reaction to the medication, was in any way disabling.
 
 
 25
 C. Grid/Vocational Expert.
 
 
 26
 Champion argues that the ALJ improperly applied the vocational grid because she had significant non-exertional limitations. Champion further argues the ALJ did not properly formulate his hypothetical question to the vocational expert. Both these contentions fail.
 
 
 27
 An ALJ should not rely on the grid to determine whether sufficient jobs exist in the economy that an individual could perform, if the individual has severe non-exertional impairments. Herron, 19 F.3d at 336. Where there are non-exertional impairments, the disability determination should be based upon testimony from a vocational expert. Id. at 336-37.
 
 
 28
 The ALJ did not apply the vocational grid, as he specifically acknowledged Champion's non-exertional limitations. (ALJ's Decision at 5). Further, "an ALJ does not have to include every one of claimant's impairments in his hypothetical questions. All that need be shown from the record is that before presenting his expert testimony, the vocational expert reviewed the claimant's medical evidence and was present during the claimant's administrative hearing testimony." See Herron, 19 F.3d at 337. See also Ragsdale v. Shalala, 53 F.3d 816 (7th Cir.1995). The ALJ did not need to list each of Champion's claimed impairments because the vocational expert reviewed her medical file and heard her testimony. (Record at 49).
 
 CONCLUSION
 
 29
 The ALJ's decision is supported by substantial evidence. The district court is
 
 AFFIRMED.[11]
 
 
 [1]
 Shirley S. Chater, Commissioner of Social Security, is substituted for Donna E. Shalala, Secretary of Health and Human Services, as the defendant-appellee in this action. See Fed.R.App.P. 43(c)
 
 
 [2]
 There were less severe injuries to the C3, C4, C6 and C7 vertebrae that were not surgically repaired
 
 
 [3]
 Champion was also diagnosed with diabetes mellitus in February 1991, and may have had some adverse reaction to her medication before the dosage was adjusted
 
 
 [4]
 Champion also argued that the ALJ made inadequate findings as to Champion's past relevant work. This claim is waived for failure to present it to the district court. See Ownbey v. Shalala, 5 F.3d 342, 345 (7th Cir.1993)
 
 
 [5]
 Which was also her presurgical condition. (Record at # 103). The MRI indicated no tear to her rotator cuff and only the continued existence of the secondary presurgical neck problems
 
 
 [6]
 Champion occasionally engaged in heavier lifting than her light duty restrictions mandated, which aggravated her shoulder
 
 
 [7]
 Dr. Mazur stated that the condition might cause some "disability," although, in context, he clearly did not mean Champion suffers from a "disability" in the legal sense
 
 
 [8]
 In related arguments, Champion maintains that the ALJ disregarded the consistent complaints of pain that exist throughout the record and played "doctor." Claims of pain, without more, will not necessarily lead to a finding of disability. See Pope, 998 F.2d at 486. Further, as noted above, only mild discomfort was reported to Drs. Hein and Mazur in two more recent visits. The ALJ did not disregard consistent reports of pain, as Champion has not established consistent reports of pain. Champion's argument that the ALJ "played doctor" by concluding that her shoulder pain could be "associated with some tendinitis" (ALJ's Decision at 3) is similarly unavailing. There are many references to shoulder tendinitis in the doctors' reports. (See Record at 161, 182, 184). The ALJ did not engage in a sua sponte diagnosis; he based his comment on the medical evidence
 
 
 [9]
 Champion also argues it was inappropriate for the ALJ to attach so much weight to Champion's conflicting statements regarding why she left her job. Champion testified that her job ended because her neck and shoulder pain prevented her from performing her duties. (Record at 32-33). Yet in her prior medical documentation, she indicated she would need to find other employment because her position was being phased out. (Record at 75, 130). Notably, Champion stated in her FCE interview that her job was being phased out but that "she is able to continue to perform it." (Record at 130). Such conflicting statements clearly go to the claimant's veracity, and the ALJ may properly consider them in assessing credibility
 
 
 [10]
 While fluctuations in blood sugar could cause fatigue, the physician's treatment notes make no reference to such complaints after the dosage was adjusted. Cf. Ownbey, 5 F.3d at 345
 
 
 [11]
 Champion also requested the award of attorney's fees as a "prevailing party". Champion is obviously not a prevailing party and is not entitled to attorney's fees