78 F.3d 586
 NOTICE: Seventh Circuit Rule 53(b)(2) states unpublished orders shall not be cited or used as precedent except to support a claim of res judicata, collateral estoppel or law of the case in any federal court within the circuit.
James C. MAYO, Jr., Petitioner-Appellant,
v.
RAILROAD RETIREMENT BOARD, Respondent-Appellee.
 No. 95-2112.
 United States Court of Appeals, Seventh Circuit.
 Argued Nov. 15, 1995.
Decided March 4, 1996.
 
 Before ESCHBACH, MANION and DIANE P. WOOD, Circuit Judges.
 
 ORDER
 
 1
 James C. Mayo, Jr., worked for nearly twenty years as a railroad brakeman. On May 22, 1991, he filed an application for a permanent disability annuity under the Railroad Retirement Act of 1974, § 2, 45 U.S.C. § 231a(a)(1)(v), claiming an inability to work due to back, neck, arm, hip, and leg pains. The Bureau of Disability and Medicare Operations denied his claim. It found that although he could no longer perform the job of railroad brakeman, there were other less strenuous jobs that he could do, which required the conclusion that he was not totally disabled within the meaning of the Act. See 20 C.F.R. § 220.26. The Bureau reaffirmed this finding upon reconsideration. Mayo then invoked his right to a hearing. In turn, the hearing officer and the full Board agreed with the Bureau's conclusion. Mayo appeals, arguing principally that the hearing officer gave insufficient weight to the treating physician's view of his ability to work. Because we find that the hearing officer's decision was supported by substantial evidence, we affirm.
 
 
 2
 The Board uses a five step approach for determinations of disability for purposes of the Railroad Retirement Act. 20 C.F.R. § 220.100. Specifically, it asks (1) whether the claimant is presently unemployed, (2) whether the claimant's impairment is severe, (3) whether the impairment meets or exceeds an impairment listed in Appendix 1 of 20 C.F.R. Part 220, (4) whether the claimant is unable to perform his or her former occupation, and (5) whether the claimant is unable to perform any other work in the economy. The Board agrees that Mayo meets criteria (1), (2), and (4), and Mayo concedes that his impairments do not appear on the list in Appendix 1. Thus, this case turns solely on Mayo's ability (or lack thereof) to perform any other work in the economy.
 
 
 3
 In this case, we review the judgment of the hearing officer, because the Board adopted her decision without issuing further findings. Dray v. Railroad Retirement Board, 10 F.3d 1306, 1310 (7th Cir.1993). The applicable standard of review is deferential: we will sustain the administrative decision if it is supported by substantial evidence and based upon proper legal criteria. Id. In this case, the evidence before the hearing officer easily satisfies that standard.
 
 
 4
 Mayo's medical records revealed a number of ailments: he had arthroscopic surgery on his left knee in 1981; he was treated for right lateral epicondylitis (tennis elbow) in 1989, and he was treated twice in 1990 for low back pain and spasms. His physician during that period of time, Dr. Waldman, diagnosed his condition as postural strain and recommended that he consult Dr. Garcia, a rheumatologist. Dr. Garcia's diagnosis, rendered in November 1990, was bilateral trochanteric (hip) bursitis, which was accompanied by significant pain. In February 1991, around the time he stopped working as a brakeman, Mayo returned to Dr. Garcia with complaints of "severe hurting in the low back, shoulder and left knee," with muscle spasms. With the benefit of X-rays, Dr. Garcia concluded that Mayo had degenerative cervical disc disease. By June 1991, Dr. Garcia noted that Mayo's various conditions were not responding to the prescribed combination of physical and pharmacological therapy he had prescribed.
 
 
 5
 In August 1991, at the request of the Board, Dr. Po examined Mayo and concluded that Mayo suffered from mild degenerative disease of the cervical spine and left knee, chronic low back strain, and obesity. Dr. Po examined him again in June 1992 and noted then that the motion of the lumbar spine was somewhat restricted, but that Mayo's gait was normal and his ranges of motion for the hip, knee, ankle, and toe were full.
 
 
 6
 The record included an opinion letter from Dr. Garcia about Mayo's prospects for future work on which Mayo relies heavily. On December 14, 1992, Dr. Garcia wrote about the difficulties Mayo experienced with various types of movements and concluded that "[i]n general, Mr. Mayo will be a very poor candidate for employment, as well as rehabilitation." After the hearing officer and the Board decided this case, Mayo's lawyer obtained a second letter from Dr. Garcia, written on January 25, 1995, in which the doctor purports to clarify his earlier statement. Mayo has filed a motion to supplement the administrative record with this second letter and to have us consider it in our decision. Unfortunately, we cannot accommodate Mayo in this request. As a reviewing court, we may only consider evidence that was before the hearing officer or the Board. 45 U.S.C. § 355(f); Luna v. Shalala, 22 F.3d 687, 689 (7th Cir.1994). We note that the Board itself denied Mayo's motion to supplement the record with the new letter on June 14, 1995, which makes it even more inappropriate for us to take it into account.
 
 
 7
 Even if Dr. Garcia was expressing a firm opinion that Mayo was incapable of performing any gainful employment in the December 1992 letter, at most that leaves us with an administrative record where two doctors disagreed, and the hearing officer chose to credit the one whose view was unfavorable to the applicant. The mere fact that Dr. Garcia was the treating physician, while Dr. Po was engaged at the request of the Board, does not require the hearing officer to give Garcia's testimony decisive weight. The only requirement, which this hearing officer easily met, is to articulate a basis for discounting the treating physician's opinion. See Dray, supra, 10 F.3d at 1311. She explained that Dr. Garcia's conclusions were often not supported by x-rays or clinical findings and that they conflicted with Mayo's own testimony. She gave the specific example of Mayo's alleged problems in walking and getting into cars. While Dr. Garcia stated that the hip bursitis impaired Mayo's ability to perform these simple functions, x-rays had repeatedly failed to confirm this, and Mayo himself stated that he was able to drive his children to school on a daily basis.
 
 
 8
 Dr. Po, in contrast, reported that Mayo could still lift 20-40 pounds for one third of an eight hour day, that he could stand or walk for 4-6 hours without interruption, that he could alternate sitting and standing in two-hour shifts, and that his ability to reach, handle, feel, see, hear, and speak were unaffected by his impairments. Mayo testified to a daily routine in which he arises at 6:00 a.m., gets his children ready for school, takes them to school, returns to wash the dishes and put a load of laundry in the washing machine, watches television, picks his children up from school, and (rarely) fixes dinner for the family. He attends church regularly. A vocational expert testified that there were a significant number of jobs in the national economy in which a hypothetical person with limitations like Mayo's could perform successfully.
 
 
 9
 Faced with this evidence about Mayo's condition, the hearing officer was entitled to conclude that Mayo failed to prove that he could not perform any work. Her decision to reject the treating physician's opinion that Mayo was "a poor candidate for employment" (assuming generously to Mayo that this is the same thing as "unfit for all work") was properly based on the lack of clinical support in the record for this view. See Dray, 10 F.3d at 1312; Kapusta v. Sullivan, 900 F.2d 94, 97 (7th Cir.1989); Pepper v. Railroad Retirement Board, 728 F.2d 404, 406 (7th Cir.1984). Mayo's arguments essentially invite us to re-weigh the evidence, but this we cannot do. The Board's decision is supported by substantial evidence, and it is therefore AFFIRMED.