In the

# United States Court of Appeals

## For the Seventh Circuit

No. 14-2222

ADRIAN C. DUNCAN, SR.,

*Petitioner*,

*v.*

UNITED STATES RAILROAD
RETIREMENT BOARD,

*Respondent.*

Petition for Review of an Order
of the Railroad Retirement Board.
No. 12-AP-0047

ARGUED JANUARY 8, 2015 — DECIDED MAY 20, 2015

Before BAUER, MANION, and ROVNER, *Circuit Judges.*

BAUER, *Circuit Judge.* In July 2010, plaintiff-appellant, Adrian C. Duncan, Sr., filed an application for a disability annuity under 45 U.S.C. § 231a(a)(1)(v) of the Railroad Retirement Act, claiming that he became disabled on October 28, 2007, due to severe back impairments. The United States Railroad Retirement Board denied his application in October 2010 and denied it again upon reconsideration in January 2011.

Duncan appealed those decisions and was granted a hearing before Hearing Officer Anne Baca. Baca denied Duncan's application for benefits in April 2012. Duncan then appealed to the three-member Board in June 2013, which rendered its final decision by affirming and adopting Baca's decision. Duncan now appeals the Board's decision pursuant to 45 U.S.C. § 355(f). We conclude that substantial evidence supports the Board's decision and affirm.

## I. BACKGROUND

After years of working as a locomotive engineer, and then more briefly as a limousine driver, Duncan applied for a disability annuity in 2010. His application alleged constant back pain stemming from a 2003 workplace injury in which he slipped on ice, hit his head, and injured his back. To begin our review, we will outline the medical evidence accrued in support of Duncan's application, followed by the evidence elicited during the related disability hearing.

### A. Medical Records

The medical records in support of Duncan's application and relevant to this appeal begin in March 2004, when Duncan visited his regular treating physician, Dr. Janice Bilby. During the visit, Duncan complained of back pain, but Dr. Bilby only noted slight tenderness and spasm in his back after an otherwise normal examination. Duncan returned to Dr. Bilby's office four more times in 2004, each time complaining of back pain. Dr. Bilby prescribed muscle relaxers and recommended physical therapy. Duncan also underwent one MRI through Dr. Bilby's office, which showed a disc rupture at L5-S1, but was otherwise within normal limits.

At his employer's request, Duncan also visited Dr. George Schoedinger in 2004. Dr. Schoedinger observed decreased lumbar range of motion, a positive straight leg test, and tenderness to the touch at L5-S1. He opined that Duncan's symptoms were consistent with disc pathology as defined by the MRI and advised Duncan to remain off work. Duncan followed up with Dr. Schoedinger a month later. During that visit, Dr. Schoedinger noted that Duncan remained unable to perform the duties of a locomotive engineer.

Duncan continued to see Dr. Schoedinger for his back pain throughout 2005. At a January 2005 visit, Dr. Schoedinger opined that Duncan had reached maximum medical improvement and recommended residual functional capacity ("RFC") testing. Dr. Schoedinger conducted an RFC examination in February 2005, which showed that Duncan could safely work at a medium physical demand level. At this time, Dr. Schoedinger advised Duncan that he should be evaluated by a vocational counselor, as he felt Duncan could not pursue the unrestricted heavy industrial activity common to many railroad positions. There is no evidence in the record that Duncan ever sought that counseling.

In March 2005, Dr. Schoedinger advised Duncan that he did not think it would be safe for him to return to his job as a locomotive engineer given his use of pain-management narcotics. In April, seeing no material change in Duncan's status, Dr. Schoedinger advised weight loss to improve his condition. In July, Dr. Schoedinger told Duncan that he could attempt returning to work as a switchman. However, a month later Duncan reported that his symptoms had escalated in severity and, as a result, Dr. Schoedinger suggested Duncan

perform medium work rather than the heavy work of a switchman. At a follow-up appointment in October, Duncan complained that throwing a switch months earlier had caused his low back pain to increase, which Dr. Schoedinger attributed to an aggravation of Duncan's previously defined lumbar disc rupture at L5-S1. Duncan returned to Dr. Schoedinger's office in December 2005, stating he could no longer tolerate his pain symptoms.

Duncan also saw his regular treating physician, Dr. Bilby, three times in 2005. Duncan did not report or reference back pain at any of the visits.

In April 2006, Dr. Schoedinger performed an anterior discectomy and instrumented interbody fusion at L5-S1. In May 2006, X-ray testing revealed a satisfactory implant position, and by June, CT scans showed solid fusion. During both the May and June visits Dr. Schoedinger recommended physical therapy and weight loss. By November, Dr. Schoedinger felt Duncan had again reached maximum medical improvement and recommended another round of RFC testing, which established that Duncan was capable of light physical work.

In 2007, Duncan resumed regular visits with Dr. Bilby. In January, Duncan visited Dr. Bilby for a blood pressure check-up. During the visit he explained he was taking Tylenol for his back pain, which had initially improved after surgery but had since worsened. Dr. Bilby recommended exercise to increase Duncan's range of motion. In February, Duncan reported pain during his back exercises to Dr. Bilby. An examination revealed a fifty percent range of motion for all planes and 5/5 motor

strength. Dr. Bilby prescribed physical therapy and anti-inflammatory medication for the pain. A month later, Duncan returned to Dr. Bilby's office due to neck pain that he felt after exercise. A nurse practitioner in Dr. Bilby's office, Kelly Burrough, prescribed Vicodin and Flexeril to treat his pain.

It was during March 2007 that Duncan filed his first application for a disability annuity (which was ultimately denied and is not the basis of this appeal). In relation to that application, Duncan saw Dr. Sandeep Gupta in May 2007. During his examination with Dr. Gupta, Duncan reported pain in his back radiating down his left leg and rated his pain generally as 6/10, but explained it was relieved by rest and hydrocodone. Dr. Gupta's musculoskeletal exam showed that Duncan's posture and gait were normal, that he had the ability to stand on his heels and toes, and that he could squat and stand up. The examination also showed decreased range of motion in the lumbar spine, normal motor strength, no muscle atrophy, and normal reflex and sensory findings. Based on the examination, Dr. Gupta opined that Duncan could lift up to ten pounds occasionally; could stand and/or walk at least two hours in an eight hour day; should not walk on uneven terrain; would have limited pushing and pulling capacity; and would be able to frequently climb stairs, balance, and stoop. Most importantly for purposes of this appeal, Dr. Gupta also opined that Duncan should never do any handling or fingering bilaterally, despite simultaneous findings of normal motor strength and reflexes.

Also as part of the 2007 disability application, consultative examiner Dr. V.P. Gomez conducted a review of Duncan's medical records. After his review, Dr. Gomez opined that

Dr. Gupta's RFC evaluation was not supported by objective medical evidence in the record.

After Dr. Gomez's review, Duncan returned to Dr. Bilby's office twice in 2007. In October, Duncan visited Dr. Bilby complaining of back pain. The resulting musculoskeletal exam showed slightly tender midlumbar back, negative straight leg raise, and full motor strength. Dr. Bilby recommended that Duncan see a pain center for options. Based on the recommendation, Duncan visited Dr. Brian Foley at the Community Spine Center in Indianapolis, who advised bed rest and recommended exercise to manage his symptoms. In November, Duncan saw Dr. Bilby again. Though the primary purpose of the visit was to discuss Duncan's blood pressure, Duncan mentioned that he would be going to the spine center to begin physical therapy to treat his lower back pain.

In 2008, Duncan visited Dr. Bilby's office five times, each time complaining of continuing back pain. Each resultant examination failed to reveal any abnormalities.

Duncan also began seeing Dr. L.H. Ferrell, a pain specialist, in 2008. In January 2008, Dr. Ferrell performed a musculoskeletal exam which showed no abnormalities. She recommended ibuprofen and physical therapy to manage Duncan's symptoms. A follow-up exam in April yielded similarly normal results and she again recommended physical therapy.

Duncan did not return to Dr. Ferrell's office until July 2009. During the first and only 2009 exam with Dr. Ferrell, Duncan exhibited an antalgic and steady gait, as well as normal strength and sensation in the lower extremities. Dr. Ferrell prescribed hydrocodone and advised Duncan to continue his

home exercise plan. She also ordered an MRI, which showed fusion at L5-S1 (from Duncan's 2006 surgery), but was otherwise unremarkable. Dr. Ferrell also completed a medical assessment form, finding that Duncan could lift no more than twenty-five pounds; could not stand or walk more than thirty minutes at a time; could not sit for long periods of time; and could not engage in repetitive stooping, crouching, or walking on uneven terrain, or pushing/pulling more than twenty-five pounds. A July 15, 2009 letter summarized these findings and noted that Dr. Ferrell had prescribed anti-inflammatory medication and exercise, but neither had been successful in treating Duncan's pain. Dr. Ferrell further wrote that MRI and CT scan testing had not shown any pathology for Duncan's pain, but explained that the lack of pathology did not necessarily mean that an inflammatory process was not occurring.

At a follow-up in November 2010, Dr. Ferrell examined Duncan with substantially similar results as previous exams. At this time, she opined that Duncan could work a four-hour day with restrictions.

During 2010, Duncan filed his second disability application. In relation to the 2010 application, consultative examiner Dr. Uy reviewed Duncan's medical records. Based on his review, Dr. Uy opined that Duncan could only lift/carry up to twenty pounds; he could stand/walk with normal breaks for at least six hours of an eight-hour day; he could occasionally climb, stoop, crouch or crawl; he was able to balance; and he had no manipulative limitations. He also found that Dr. Ferrell's RFC testing and medical assessment form were incomplete in light of the objective medical evidence.

Finally, Duncan visited Dr. Ferrell twice in 2011. In January 2011, Dr. Ferrell observed a normal and steady gait, and 5/5 strength. At the second visit in April, Dr. Ferrell made largely the same observations as in the January exam, but with the additional notation that Duncan no longer had pain to the touch in his lower back. She also stated that Duncan's pain was better with medication and exercise. She ultimately recommended that Duncan continue his exercise and medication regimen.

### B.  The December 5, 2011 Hearing

The transcript of the hearing held by Baca in connection with the denial of Duncan's disability application included testimony from Duncan himself and Michael Blankenship, a vocational consultant.

Duncan testified that he worked as a locomotive engineer, and later as a switchman, before stopping due to pain. When he stopped working for the railroad in 2007, he began working for himself as a limousine driver until he could no longer work at all due to his back pain. He explained that his back pain prevented him from working and that the pain left him unable to concentrate. He alleged that the pain was constant and had been since his 2006 surgery. He also stated that physical therapy had not helped.

For his part, Blankenship presented testimony regarding jobs that Duncan could perform given his impairments based on two different RFCs. Relying on Dr. Uy's 2010 RFC, Blankenship concluded that Duncan could perform work as a chauffeur as it is normally performed (although perhaps not as Duncan was performing it in his own business), and that he

could perform a variety of light or sedentary unskilled jobs. Based on Dr. Gupta's 2007 RFC, however, Blankenship testified that there were no jobs in the national economy that Duncan could perform. Blankenship attributed this conclusion to Dr. Gupta's total restriction on fingering and handling; Blankenship stated that when handling is entirely restricted, all jobs are eliminated.

After the hearing, Baca concluded that Duncan was not entitled to a disability annuity because his impairments did not prevent him from performing regular work. Baca reached this conclusion by relying in large part on Dr. Uy's testimony, as well as the other objective medical evidence in the record. Notably, she concluded that neither Dr. Gupta's RFC handling restriction nor Dr. Ferrell's opinion regarding Duncan's disability were supported by the objective medical evidence in the record. She also discounted Duncan's complaints of disabling pain as not credible because there was no evidence that his impairments would compromise his ability to perform a restricted range of light work.

### C. The Board's Decision

Following his unfavorable result at the hearing, Duncan appealed to the Board. He argued that Baca improperly discounted Dr. Ferrell's opinion, improperly discredited his own complaints of pain, and imposed her own standards as to what sort of treatment Duncan should have sought if he was truly disabled. Unpersuaded, the Board affirmed and adopted Baca's decision. The Board also added its own comments to Baca's ruling in its decision.

Duncan now appeals the Board's decision.

## II.  DISCUSSION

We will affirm a board's decision if it is supported by substantial evidence in the record. *Peppers v. R.R. Ret. Bd.*, 728 F.2d 404, 406 (7th Cir. 1983). Given the similarities between the Social Security Act and the Railroad Retirement Act, our review is quite similar to appeals involving Social Security disability benefits, *Dray v. R.R. Ret. Bd.*, 10 F.3d 1306, 1310 (7th Cir. 1993), and Social Security decisions may be relied upon readily. *Peppers*, 728 F.2d at 406.

Duncan raises two arguments on appeal. First, he contends that the Board erred in relying on the opinion of Dr. Uy, a non-treating physician, over the opinions of Dr. Ferrell and Dr. Gupta. Next, he argues that the Board erred in rejecting Duncan's allegations of incapacitating pain as not credible. We will address each argument in turn.

### A.  Physicians' Opinions

At the hearing, Baca found that neither Dr. Ferrell's nor Dr. Gupta's opinions were entitled to extra weight because they were not supported by the totality of the record evidence; she found that Dr. Uy's opinion was supported by the objective findings in the record and relied on his opinion instead. On appeal to the Board, Duncan argued that these decisions were not supported by substantial evidence in the record. The Board disagreed and affirmed. Now, Duncan argues that the Board's affirmation is without substantial support from the record.

A treating physician's opinion, like Dr. Ferrell's, is entitled to controlling weight if it is supported by medical findings and is consistent with substantial evidence in the record. *Skarbek v.*

*Barnhart*, 390 F.3d 500, 503 (7th Cir. 2004). But a reviewing board may discount a treating physician's opinion if it is inconsistent with the opinion of a consulting physician, *id.*, or when the treating physician's opinion is inconsistent with substantial evidence in the record, *Gudgel v. Barnhart*, 345 F.3d 467, 470 (7th Cir. 2003), so long as the board minimally articulates its reasons for rejecting the opinion. *Clifford v. Apfel*, 227 F.3d 863, 870 (7th Cir. 2000). The Board was critical of Dr. Ferrell's opinion that Duncan could not perform even sedentary work, despite objective medical evidence that his pain improved with medicine, he had a normal gait, his muscle strength was 5/5, and his sensation was normal. Due to these inconsistencies, the Board discounted Dr. Ferrell's opinion in favor of Dr. Uy's consultative opinion, which the Board found was supported by record evidence. Upon review, the Board's recitation of the conflict between Dr. Ferrell's opinion and the evidence in the record is both adequately articulated and supported by substantial evidence from the record. Accordingly, the Board did not err in affirming Baca's decision as to Dr. Ferrell.

As to Dr. Gupta, Duncan argues that the Board and Baca improperly rejected Dr. Gupta's opinion in assessing Duncan's RFC. Because the Board adopted the hearing officer's decision as to Dr. Gupta without issuing further findings, we evaluate the judgment of the hearing officer. *Dray*, 10 F.3d at 1310 (citing *Hayes v. R.R. Ret. Bd.*, 966 F.2d 298, 302 (7th Cir. 1992)). Baca discounted Dr. Gupta's opinion because his assessment, which included complete restrictions on fingering and handling, was inconsistent with his examination findings of normal motor strength and normal reflexes. Baca instead concluded that

Dr. Gupta's examination findings were more consistent with an
RFC for less than sedentary work. As long as the hearing
officer's decision to reject a physician's opinion is at least
minimally articulated, the hearing officer has the discretion to
so reject the opinion. *Clifford*, 227 F.3d at 870. Here, Baca
explained her decision to discount Dr. Gupta's opinion was
due to the inconsistency between his conclusion and his
examination findings; this explanation meets the minimally
articulated standard. Further, Baca's decision is supported by
substantial evidence in the record. The record supports the
finding that Duncan is able to perform light and sedentary
work with restrictions as described by the vocational expert.
Therefore, the Board did not err in affirming Baca's decision as
to Dr. Gupta.

## B. Credibility Determination

The Board rejected Duncan's complaints of disabling pain
as not credible in light of the objective evidence. Duncan
argues that this was error. We review credibility determina-
tions deferentially and we will affirm them unless the peti-
tioner demonstrates that they are patently wrong. *Dray*, 10 F.3d
at 1314.

It is well-established that the hearing officer may resolve
discrepancies between objective medical evidence and self
reports of debilitating pain, *see Jones v. Astrue*, 623 F.3d 1155,
1161 (7th Cir. 2010), and here, material discrepancies abound.
Duncan testified at his hearing to debilitating back pain, but
also reported improvement with medication and exercise
during his most recent visit with Dr. Ferrell. Additionally, his
most recent MRIs showed no abnormalities. He also exhibited

a normal gait, normal muscle strength, and normal sensation at his most recent doctor visits.

It is worth noting that the Board did not discount Duncan's complaints out of hand, but rather upheld Baca's finding that Duncan's complaints of pain were only credible to the extent that they limited him to light work. Critically, Baca's opinion highlights the discrepancy that supports Duncan's capacity for light or sedentary work despite his complaints: she explained that there was no evidence of significant motor loss or weakness, and that his examination reports to that effect were within normal limits. Without that evidence, Baca concluded that although Duncan's pain would prevent him from performing strenuous labor, it would not require him to avoid *all* work. Baca's explanation of the discrepancy satisfies our requirements for affirmance. *See Adaire v. Colvin*, 778 F.3d 685, 687 (7th Cir. 2015) (finding administrative law judge erred in rejecting claimant's complaints of severe pain without considering objective evidence that could support claimant's complaints).

The Board is not "required to give full credit to every statement of pain, and require a finding of disabled every time a claimant states that she feels unable to work," *Dray*, 10 F.3d at 1314, particularly where those statements are not supported by objective medical evidence. Duncan's complaints are not supported by the medical evidence of record and the Board properly affirmed Baca's decision. In light of the foregoing evidence, Duncan has not met his burden that the Board's credibility determination is patently wrong.

### III. CONCLUSION

The Board's conclusion that Duncan retains the capacity to perform a reduced range of work and that he is not disabled is supported by substantial evidence in the record. Therefore, we AFFIRM.